UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | |
|---|---|
| MARLO SOLOMON, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:17-cv-92 ) |
| WARDLAW CLAIM SERVICES, LLC, | ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

This matter is before the court on the Motion for Summary Judgment [DE 50], and the Objections and Motion to Strike Portions of Plaintiff's Summary Judgment Exhibits [DE 65] filed by the defendant, Wardlaw Claim Services, LLC, on October 31, 2018 and January 4, 2019. For the following reasons, the Motion for Summary Judgment [DE 50] is **GRANTED**, and the Objections and Motion to Strike Portions of Plaintiff's Summary Judgment Exhibits [DE 65] is **GRANTED.**

*Background*

The plaintiff, Marlo Solomon, filed her Complaint on November 30, 2017, alleging violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-e *et seq*. Solomon has brought claims under Title VII for race discrimination and hostile work environment (Count I); sex discrimination and hostile work environment (Count II); retaliation (Count III); and an Indiana statutory and state law claim for blacklisting (Count IV).

The defendant, Wardlaw Claim Services, LLC, is an independent insurance claims adjusting company headquartered in Waco, Texas. Wardlaw staffed claim operations centers in various parts of the country for State Farm Insurance, including West Lafayette, Indiana.

Solomon, a black female, was hired by Wardlaw in October of 2014 to work at the West Lafayette operations center as a trainer. She was promoted from trainer to Assistant Site Manager, effective July 1, 2015. Solomon reported to Diana Waggoner, the National Account Manager, and Crystal Bell, the Director of HR.

On October 17, 2015, Wardlaw hired Randy Kinder, a white male, as a trainer at the West Lafayette operations center. He was promoted to Assistant Site Manager on December 30, 2015. Solomon has alleged that she received complaints from other female employees concerning Kinder's conduct. Additionally, Solomon alleged that she was subjected to Kinder's harassment when he referred to her as a "bitch" and stared and stood over her while she worked. Solomon contends that she reported the complaints about Kinder to Waggoner. On January 5, 2016, Solomon sent Bell an email that a female employee had approached her about a sexual harassment complaint against Kinder. Less than forty-eight hours after receiving this complaint, Kinder was terminated from Wardlaw.

Solomon contends that after she reported Kinder's conduct, Wardlaw commenced a "campaign to terminate [her] employment." First, she has indicated that Wardlaw questioned her about her time sheets. On January 20, 2016, Waggoner emailed Solomon regarding her time sheet for the preceding week. (DE 50-1, Ex. 23, 24). Specifically, Waggoner questioned Solomon on why she had indicated that she worked until 6:30 p.m. on January 14, 2016, when Waggoner had personal knowledge that Solomon left an hour earlier. (DE 50-1, Ex. 24).

Wardlaw hired Charlette Green, a black female, to replace Kinder on January 13, 2016. Green was working for Wardlaw in Missouri before she was promoted and transferred to West Lafayette. After Green began working at the West Lafayette operations center, Waggoner sent an email that instructed the West Lafayette management team, which included Solomon, about

2

management expectations. (DE 50-1, Ex. 25). Waggoner advised that everyone was expected to be aware of updates, changes, and expectations, and therefore all email communications were to be shared with the entire management team. (DE 50-1, Ex. 25). On February 4, 2016, Solomon emailed Waggoner numerous complaints about how Green was managing her team. (DE 50-1, Ex. 27). Thereafter, on February 5, 2016, Waggoner held a conference call with the West Lafayette management team emphasizing the necessity for teamwork and cooperation, and indicating that disruptive and toxic attitudes would not be tolerated. (DE 50-1, Ex. 47). After the conference call, Green made allegations about Solomon to Waggoner. (DE 50-1, Ex. 47). Bell and Waggoner called Solomon to discuss the allegations. (DE 50-1, Ex. 47). Over the next few weeks, Green reported to Waggoner and Jason Keahey, Wardlaw's Field Manager, that Solomon was excluding her from team meetings and communications. (DE 50-1, Ex. 29).

Waggoner and Bell interviewed two senior employees, Kenneth Jackson, a black male, and Tiffany Turnbull, a white female, who worked at the West Lafayette office on March 7, 2016 and March 8, 2016. (DE 50-1, Ex. 46, 47). Jackson indicated that Solomon created an unbearable work environment. (DE 50-1, Ex. 46, 47). Also, Turnbull indicated that there was a great divide and animosity within the office. (DE 50-1, Ex. 46, 47). Turnbull described Green as the "best manager" and as "very fair." (DE 50-1, Ex. 46, 47). Wardlaw offered this evidence to establish Waggoner's and Bell's state of mind in deciding whether to terminate Solomon's employment. Accordingly, such evidence is admissible as non-hearsay evidence. Wardlaw terminated Solomon's employment on March 9, 2016. (DE 50-1, Ex. 46, 47).

After Solomon was discharged, she filed a charge of discrimination with the EEOC on April 1, 2016. (DE 19-1). Solomon alleged discrimination based on race, sex, and retaliation. She indicated that the earliest date she was subjected to discrimination was December 1, 2015.

3

Thereafter, Solomon began working for Eberl Claims Service in Duluth, Georgia. (DE 50-1, Ex. 39, 40). Her employment with Eberl was expected to last until June 25, 2016. (DE 50-1, Ex. 39). However, she was discharged by Eberl on May 24, 2016. Solomon filed a second charge of discrimination on February 13, 2017, alleging discrimination based on race, age, and retaliation. (DE 19-1).

Solomon has alleged that Wardlaw violated Title VII by terminating her employment because of her race and sex and in retaliation for reporting the alleged harassment of Randy Kinder. Moreover, Solomon asserts that she was subjected to a racially and sexually hostile working environment. After Solomon was discharged by Wardlaw, she contends that she was placed on State Farm's "do not rehire" list, and as a result discharged by Eberl. Solomon contends that State Farm's decision to place her on the "do not rehire" list was based on false information allegedly provided by Wardlaw. Solomon claims that Wardlaw's alleged disclosure of false information constituted unlawful retaliation and backlisting under Indiana law.

*Discussion*

Before addressing Wardlaw's motion for summary judgment, the court first must determine what evidence it may consider by addressing Wardlaw's motion to strike. Wardlaw has moved to strike certain portions of Solomon's supporting affidavit and exhibits. Wardlaw asserts that certain paragraphs in Solomon's affidavit and exhibits should be stricken because the statements contain inadmissible hearsay, lack foundation to show that Solomon has personal knowledge of the facts asserted, and lack relevance. Solomon did not file a response in opposition to the motion to strike.

Wardlaw has moved to strike paragraphs 5, 10, 11, 13, 14, 16, 21, 26, 27, 28, 29, 38, and 39 of Solomon's affidavit because the statements contain inadmissible hearsay and are not

4

predicated on personal knowledge. (DE 60-1). Hearsay is defined as a statement that is made outside of "the current trial or hearing" that "a party offers in evidence to prove the truth of the matter asserted in the statement." **Federal Rule of Evidence 801(c).** Third party out of court statements may be hearsay. Solomon's affidavit includes statements from third parties. Solomon has not submitted an affidavit from those individuals in an attempt to avoid the hearsay problem.

Moreover, **Federal Rule of Civil Procedure 56(c)(4)** mandates that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." The affiant may include reasonable inferences drawn from her own observations but may not testify as to the knowledge or observations of another. *Payne v. Pauley*, 337 F.3d 767, 772 (7th Cir. 2003) (quoting *Visser v. Packer Eng'g Assoc.*, 924 F.2d 655, 659 (7th Cir. 1991) (en banc)) ("[A]lthough personal knowledge may include reasonable inferences, those inferences must be 'grounded in observation or other first-hand personal experience. They must not be flights of fancy, speculations, hunches, intuitions, or rumors about matters remote from that experience.'"); *see also Jenkins v. Heintz*, 124 F.3d 824, 831 (7th Cir. 1997) (affiant cannot testify as to the knowledge of another). Under **Federal Rule of Evidence 602** "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."

Solomon has not introduced evidence establishing that she had personal knowledge of the matters stated in paragraphs 5, 10, 11, 16, 21, 26, 27, 28, 29, 38, and 39. Also, the statements declaring what other employees reported are inadmissible hearsay when they are offered to prove the truth of the matter asserted. Accordingly, the court strikes paragraphs 5, 10, 11, 13, 14, 16,

21, 26, 27, 28, 29, 38, and 39.  Wardlaw also has moved to strike excerpts from Solomon's deposition that discuss conversations with employees and what the employees allegedly told her.  The court agrees that the deposition testimony recounting alleged conversations with other employees is inadmissible hearsay and therefore should be stricken.  (Solomon Dep. 60-4, pp. 79-86; 88-94).

Wardlaw has moved to strike paragraphs 8, 22, 24, and 25 of Solomon's affidavit because the statements are not relevant and cannot create a genuine issue of material fact for trial under applicable law.  **Federal Rule of Evidence 401** provides that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action."  Only facts that are outcome determinative under the applicable law are material for summary judgment purposes.  *Smith ex rel. Smith v. Severn*, 129 F.3d 419, 427 (7th Cir. 1997).

Paragraphs 8, 22, 24, and 25 are not outcome determinative and therefore are not relevant.  As it relates to paragraph 8, Solomon testified that she did not consider Kinder's conduct to be sexually harassing.  (Solomon Dep. 50-1, Ex. 48, p. 87).  Next, paragraphs 22, 24, 25 are statements that relate to Green.  However, whether Solomon bullied or disparaged Green is irrelevant.  The relevant question is whether Wardlaw had a legitimate, nondiscriminatory reason for firing Solomon, not whether it made the correct decision.  It is not "the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee.  Rather, the only question is whether the employer's proffered reason was pretextual, meaning that it was a lie." *Ineichen v. Ameritech,* 410 F.3d 956, 961 (7th Cir. 2005).  Accordingly, the court strikes paragraphs 8, 22, 24, and 25.  Also, the court strikes as irrelevant the excerpts from Solomon's deposition regarding the discussions about if Solomon stated "I can

curl my hair and brush my teeth," for the same reasons as discussed above. (Solomon Dep. 60-9, pp. 154-156).

Wardlaw has moved to strike the purported transcript of an audio conference call between Solomon and Kenneth Jackson, an employee of Wardlaw. (DE 60-10). The transcript has not been authenticated, nor does it contain certifications that the transcription is accurate or complete. Therefore, Solomon may not rely on it to create a genuine issue of material fact. Accordingly, the court strikes the transcript. (DE 60-10).

Based on the foregoing reasons, the court **GRANTS** the Objections and Motion to Strike Portions of Plaintiff's Summary Judgment Exhibits [DE 65].

Pursuant to **Federal Rule of Civil Procedure 56(a),** summary judgment is proper only if it is demonstrated that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Garofalo v. Vill. of Hazel Crest*, 754 F.3d 428, 430 (7th Cir. 2014); *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012); *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). A fact is material if it is outcome determinative under applicable law. The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160, 90 S. Ct. 1598, 1610, 26 L. Ed. 2d 142, 155 (1970); *Stephens*, 569 F.3d at 786. When the movant has met its burden, the opposing party cannot rely solely on the allegations in their pleadings but must "point to evidence that can be put in admissible form at trial, and that, if believed by the fact-finder, could support judgment in his favor." *Marr v. Bank of America, N.A.,* 662 F.3d 963, 966 (7th Cir. 2011); *see also Steen v. Myers,* 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory,*

7

407 F.3d 852, 859 (7th Cir. 2005) (summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events.")).  The non-moving party cannot rely on conclusory allegations. *Smith v. Shawnee Library System,* 60 F.3d 317, 320 (7th Cir. 1995).  Failure to prove an essential element of the alleged activity will render other facts immaterial.  *Celotex,* 477 U.S. at 323; *Filippo v. Lee Publications, Inc.,* 485 F. Supp. 2d 969, 972 (N.D. Ind. 2007) (the non-moving party "must do more than raise some metaphysical doubt as to the material facts; he must come forward with specific facts showing a genuine issue for trial.").

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 212 (1986); *McDowell v. Vill. of Lansing*, 763 F.3d 762, 764, 765 (7th Cir. 2014).  In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.  *Anderson,* 477 U.S. at 248; *Cung Hnin v. Toa, LLC*, 751 F.3d 499, 504 (7th Cir. 2014); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008).

Solomon has alleged claims under Title VII in Counts I and II of the Complaint for race discrimination and hostile work environment, as well as sex discrimination and hostile work environment.  She contends that Wardlaw violated Title VII by terminating her employment due to her race, treating her differently than her Caucasian co-workers, and discriminating against her due to her race.  (Complaint ¶ 43).  Additionally, she contends that Wardlaw violated Title VII by terminating her employment due to her sex, treating her differently than her male co-workers, and discriminating against her due to her sex.  (Complaint ¶ 48).

Title VII prohibits discrimination "against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." **42 U.S.C. § 2000e-2(a)(1).** In *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 764, 766 (7th Cir. 2016), the Seventh Circuit abandoned the dichotomy of direct and indirect evidence on summary judgment in employment discrimination cases and held that the "sole question that matters" is whether a reasonable juror could conclude that the plaintiff would not have suffered the adverse employment action if she was a different sex or race and everything else had remained the same. All evidence should be considered together to understand the pattern it reveals. *Ortiz,* 834 F.3d at 765. However, the court clarified that its decision did not concern the burden-shifting framework of **McDonnell Douglas Corp. v. Green,** 411 U.S. 792 (1973), or any other burden-shifting framework. *Ortiz,* 834 F.3d at 766.

Courts have continued to use the familiar *McDonnell-Douglas* burden-shifting framework to evaluate the evidence in the record. **David v. Bd. of Trs. of Cmty. Coll. Dist. No. 508,** 846 F.3d 216, 224 (7th Cir. 2017). To establish a prima facie case of discrimination, Solomon has the initial burden to show that: (1) she is a member of a protected class; (2) she performed reasonably on the job in accordance with Wardlaw's legitimate expectations; (3) she was subjected to an adverse employment action; and (4) similarly situated employees outside of the protected class were treated more favorably by the employer. *David,* 846 F.3d at 225. "If the plaintiff satisfies that burden, then the employer must articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to the plaintiff to submit evidence that the employer's explanation is pretextual." *David***,** 846 F.3d at 225 (quoting **Andrews v. CBOCS West, Inc.**, 743 F.3d 230, 234 (7th Cir. 2014), *overruled on other grounds by Ortiz***,** 834 F.3d at 765).

9

Solomon has not satisfied her burden and has not established a prima facie case of discrimination. In fact, she did not even address her claims that she was terminated by Wardlaw because of her race and sex in her response in opposition. There is no dispute that Solomon was a member of a protected class and that she suffered an adverse employment action. However, she has failed to identify any similarly situated Caucasian or male co-workers who were treated more favorably. Solomon has not submitted any evidence that she and a Caucasian or a male employee "reported to the same supervisor, engaged in the same conduct, and had the same qualifications," and that "there were no 'differentiating or mitigating circumstances as would distinguish . . . the employer's treatment of them.'" **Ineichen v. Ameritech**, 410 F.3d 956, 960–61 (7th Cir. 2005) (quoting **Radue v. Kimberly-Clark Corp.**, 219 F.3d 612, 617–18 (7th Cir. 2000)). Her failure to offer such "comparables" dooms her Title VII race and sex discrimination claims. **Peele v. Country Mut. Ins. Co.**, 288 F.3d 319, 330 (7th Cir. 2002). Accordingly, Wardlaw is entitled to judgment on Solomon's race and sex discrimination claims.

Additionally, Solomon has claimed that she was subjected to harassment based on her race and sex and that the harassment created a hostile work environment. She testified that her allegations of a racially or sexually hostile work environment were based on the conduct of Kinder. (Solomon Dep. 50-1, Ex. 48, p. 24). To prove that an employment environment was actionably hostile, Solomon must show that: (1) she was subject to unwelcome harassment; (2) the harassment was based on her race or sex; (3) the harassment was severe or pervasive to a degree that altered the conditions of employment and created a hostile or abusive work environment; and (4) there is a basis for employer liability." ***Gates v. Board of Education of the City of Chicago,*** 916 F.3d 631, 636 (7th Cir. 2019) (citing **Robinson v. Perales**, 894 F.3d 818, 828 (7th Cir. 2018)).

The court, without deciding whether Solomon's allegations satisfy the first three elements of a Title VII hostile work environment claim, considers whether there is a basis for employer liability. *See* **Tutman v. WBBM–TV, Inc./CBS, Inc.,** 209 F.3d 1044, 1048–49 (7th Cir. 2000) ("We do not decide whether a hostile work environment existed because the question whether [the employer] took prompt and effective action is dispositive here."). Solomon did not present any argument or discussion relating to employer liability.

"[E]mployers are strictly liable for the discriminatory acts perpetrated by supervisors and they are liable for the discriminatory acts of others – coworkers, independent contractors, customers, inmates etc. – only if they are negligent either in discovering or remedying the harassment." **Johnson v. Advocate Health & Hosps. Corp.**, 892 F.3d 887, 904 (7th Cir. 2018). Solomon testified that Kinder was a co-worker. (Solomon Dep. 50-1, Ex. 48, p. 73). In the case of co-worker harassment, "[t]he plaintiff bears the burden of showing that the employer knew of the problem and that the employer did not act reasonably to remedy the issue once it had knowledge." **Johnson,** 892 F.3d at 904.

Solomon, in her response, claimed that "[o]nly two weeks after Wardlaw hired Kinder, [she] reported harassment complaints by female employees. For almost three months, the entire time Kinder was employed by Wardlaw at the West Lafayette office, Solomon and other female employees complained of harassment. Wardlaw never took action against Kinder, but did promote him." However, a party must support the facts upon which it relies at summary judgment by "citing to particular parts of materials in the record" that establish those facts. **Federal Rule of Civil Procedure 56(c)(1)** (emphasis added); **Sommerfield v. City of Chicago.**, 863 F.3d 645, 650 (7th Cir. 2017). Solomon, for each factual assertion made in the statement of facts and the argument sections, should have cited to a specific place in an exhibit that supported

11

that assertion. Solomon's response brief has failed to do so in many instances. Accordingly, the court must rely on the facts that have been properly cited and supported. **Rule 56(c)(3).**

Solomon indicated that she received complaints from female employees regarding Kinder and reported these complaints to Waggoner by phone on November 5, 2015, and by email on November 12, 2015. (Solomon Aff. ¶ 4). However, the email that Solomon has cited in her response, dated November 13, 2015, discusses an incident with Kinder taking an "AR call on the floor with ECR Jean Downing." (DE 60-1, Ex. 3). Moreover, Solomon testified, and as indicated in her EEOC charge, that any harassment occurred between December 1, 2015 and the date Kinder was fired, January 7, 2016. (Solomon Dep. 50-1, Ex. 48, p. 62). Accordingly, Solomon's allegations of when Wardlaw knew or should have known of the harassment were inconsistent.

Wardlaw submitted the affidavit of Diana Waggoner, the National Account Manager for Wardlaw at the time of the allegations. Waggoner attests that Solomon, neither through email or a phone conversation, reported any complaints of discrimination or harassment based on race, sex, or any other basis by Kinder prior to January 5, 2016. (Waggoner Aff. 69-1). Waggoner attests that the first report Solomon made of sexual harassment was an email sent to Crystal Bell on January 5, 2016. (Waggoner Aff. 69-1). Waggoner indicated that no other employee, besides Solomon, reported to her that Kinder had sexually harassed her or anyone else. (Waggoner Aff. 69-1). Also, Solomon did not report that Kinder harassed any employee on the basis of race or made racist comments. (Waggoner Aff. 69-1). Solomon testified that she was not subjected to any racial harassment by Kinder and that she never heard him use any racial epithets toward anyone. (Solomon Dep. 50-1, Ex. 48, pp. 63-66). Kinder was fired within forty-eight hours of Solomon's email alleging sexual harassment. (Waggoner Aff. 69-1).

Wardlaw has satisfied its obligation under Title VII by promptly taking disciplinary action. *See* **Porter v. Erie Foods Int'l Inc.,** 576 F.3d 629, 636 (7th Cir. 2009) ("Our focus, therefore, is on whether [the employer] responded promptly and effectively to the incident."). Accordingly, the facts demonstrate that there is no basis for employer liability. Thus, Wardlaw is entitled to judgment on Solomon's racially and sexually hostile work environment claims.

Solomon has alleged that Wardlaw unlawfully retaliated against her because she engaged in protected activity. "Statutorily-protected activity 'requires more than simply a complaint about some situation at work, no matter how valid the complaint might be.' . . . Rather, 'the complaint must indicate [that] discrimination occurred because of sex, race, national origin, or some other protected class.'" **Cole v. Bd. of Trs. of N. Ill. Univ.,** 838 F.3d 888, 901 (7th Cir. 2016); **Tomanovich v. City of Indianapolis,** 457 F.3d 656, 663 (7th Cir. 2006). Title VII bans employers from retaliating against employees who exercise rights under it. Title VII protects "any . . . employees" who "opposed any practice" banned by the statute, or who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under the statute. **42 U.S.C. § 2000e-3(a).** Title VII's separate anti-retaliation provision seeks to prevent harm to individuals based on what they do, i.e., their conduct. **Burlington Northern & Santa Fe Railroad Company v. White**, 548 U.S. 53, 63, 126 S. Ct. 2405, 2412, 165 L.E. 2d 345 (2006).

To establish retaliation, Solomon must prove: (1) that she engaged in statutorily protected activity; (2) that she was subjected to an adverse employment action; and (3) that there was a causal connection between the two. **Ripberger v. Corizon, Inc.,** 773 F.3d 871, 881 (7th Cir. 2014). The court considers the evidence as a whole and conducts a "straightforward inquiry: Does the record contain sufficient evidence to permit a reasonable fact finder to conclude that

retaliatory motive caused the [materially adverse action]?" *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016) (citing *Ortiz*, 834 F.3d at 765).

Wardlaw does not dispute that Solomon engaged in statutorily protected activity by complaining about alleged impermissible harassment and that she was subjected to an adverse employment action when she was terminated on March 9, 2016. However, it does dispute that Solomon has produced any evidence to establish that there was a causal connection between her protected activity and her termination. In a retaliation claim, causation can be established by circumstantial evidence, which includes, "suspicious timing, a pretextual explanation for the termination, and evidence that similarly situated employees were treated differently." *Gracia v. SigmaTron Int'l, Inc.*, 842 F.3d 1010, 1021 (7th Cir. 2016).

Solomon contends that the timing of her termination was suspicious. The temporal proximity of an adverse employment action by the employer and the Title VII protected activity by the employee must be "very close" to establish causality. *Dennis v. Potter,* 2012 WL 8251513, at *19 (N.D. Ind. 2012); *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 919 (7th Cir. 2000) (three-month interval insufficient to permit inference of retaliation). However, "[s]uspicious timing alone rarely satisfies the causation prong of a plaintiff's burden on summary judgment in a retaliation case." *O'Leary v. Accretive Health, Inc.,* 657 F.3d 625, 629 (7th Cir. 2011). Moreover, a short gap "may permit a plaintiff to survive summary judgment" only if "there is also other evidence that supports the inference of a causal link." *Lang v. Ill. Dep't of Children & Family Servs.*, 361 F.3d 416, 419 (7th Cir. 2004).

Solomon indicated that her most recent complaint occurred days prior to her termination. She also indicated that all of her complaints were within four months of her termination. However, Solomon again failed to cite to the record to support these facts. The non-movant

14

must "cite to particular parts of materials in the record." **Rule 56(c)(1)(A).** The only evidence of complaints regarding Kinder's harassment was the January 5, 2016, email sent from Solomon to Bell. Solomon was discharged on March 9, 2016.

Next, Solomon contends that the reasons provided by Wardlaw for her termination were pretextual. Wardlaw has indicated that the facts giving rise to Solomon's discharge included falsification of her time records, her efforts to bully or discredit Charlette Green, violations of State Farm's security policies, and not following Waggoner's instructions about copying all managers on email communications. Solomon contends that Wardlaw was "in search for a reason to terminate [her] employment." However, she has not presented any evidence that the decision to terminate her was because of retaliatory animus.

"The issue of pretext does not address the correctness or desirability of reasons offered for employment decisions. Rather, it addresses the issue of whether the employer honestly believes in the reasons it offers." **Wade v. Lerner N.Y., Inc.,** 243 F.3d 319, 323 (7th Cir. 2001). Solomon must demonstrate that Wardlaw did not honestly believe the reasons it gave for her termination. She must point to evidence that they are not the real reasons it fired her, have no grounding in fact, or are insufficient to warrant the termination decision. **Senske v. Sybase, Inc.,** 588 F.3d 501, 507 (7th Cir. 2009). Solomon's "subjective beliefs" are insufficient to create a genuine issue of material fact. See **Mills v. First Federal Sav. & Loan Ass'n of Belvidere,** 83 F.3d 833, 841 (7th Cir. 1996).

Solomon admitted in her deposition to recording more time on her time sheet than she actually worked, to violating State Farm's security policies, and to not following Waggoner's instructions regarding communications with other managers. (Solomon Dep. 50-1, Ex. 48, pp. 115-117, 127-29, 134, 142-44). She has not rebutted each reason by showing that it actually was

15

a pretext for discrimination. Moreover, the "common actor inference says it is reasonable to assume that if a person was unbiased at Time A (when he decided to hire the plaintiff), he was also unbiased at Time B (when he fired the plaintiff)." *McKinney v. Office of Sheriff of Whitley County,* 866 F.3d 803, 814 (7th Cir. 2017) (quoting *Perez v. Thorntons, Inc.*, 731 F.3d 699, 710 (7th Cir. 2013). Waggoner sought Solomon out twice for the position based on information received from other claims personnel and offered her the job. (Waggoner Aff. 50-1, Ex. 47). Thus, despite hiring Solomon, Waggoner made the decision to fire her on March 9, 2016. (Waggoner Aff. 69-1).

Solomon has failed to present any evidence that Wardlaw's proffered legitimate, non-discriminatory reasons for terminating her employment were pretextual. She attempts to argue that Green was accused of similar conduct by other employees, yet her employment was not terminated. However, she has not presented any admissible evidence to support that contention. Solomon has not shown a casual connection between her protected activity and her termination. "The mere temporal proximity is not enough to establish a genuine issue of material fact." *Hutt v. AbbVie Products LLC,* 757 F.3d 687, 693 (7th Cir. 2014).

Following her discharge by Wardlaw, Solomon filed a charge of discrimination on April 1, 2016. (DE 19-1). On April 30, 2016, Solomon was hired by Eberl Claims Service in Duluth, Georgia. Solomon has argued that she was discharged by Eberl on May 24, 2016, because Wardlaw disclosed false information to State Farm. Solomon asserts that the alleged disclosure of false information to State Farm constituted further unlawful retaliation.

The Seventh Circuit has recognized that post-termination events are actionable under Title VII. See *Veprinsky v. Fluor Daniel, Inc.,* 87 F.3d 881 (7th Cir. 1996); *Ruedlinger v. Jarrett,* 106 F.3d 212, 214 (7th Cir. 1997). The following year, the Supreme Court upheld an

expansive reading of the term "employee" in the statute, finding that former employees are protected from retaliatory actions by their former employers under the anti-retaliation provisions of Title VII. *Robinson v. Shell Oil Co.,* 519 U.S. 337, 346, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997). Accordingly, post-termination retaliation would follow the same framework that the Seventh Circuit has established for retaliation cases in general. *Veprinsky,* 87 F.3d at 890. Thus, Solomon must establish: (1) that she engaged in statutorily protected activity; (2) that she was subjected to an adverse employment action; and (3) that there was a causal connection between the two. *Ripberger v. Corizon, Inc.,* 773 F.3d 871, 881 (7th Cir. 2014); *Wilson v. Lear Seating Corporation,* 258 F. Supp. 3d 916, 924 (N.D. Ind. 2017).

Solomon has failed to provide any evidence that sometime before May 24, 2016, Wardlaw provided false information regarding Solomon to State Farm or Eberl and that the information was the basis upon which Eberl terminated her employment. Accordingly, Solomon has not provided any admissible evidence that her termination was because of any alleged action by Wardlaw.

In her response, Solomon claims that her termination was because of "an investigation of falsification of records while she was working for Wardlaw." The exhibit she cites is an email indicating that Solomon temporarily was not authorized to work on State Farm assignments. (DE 50-1, Ex. 41). The email does not indicate why or reference any investigation or suspected falsification of records. Moreover, the email does not even reference Wardlaw. Accordingly, without admissible evidence that Wardlaw knowingly disclosed false information, there is no basis for a jury to conclude that Wardlaw took any adverse action against her.

Solomon has failed to show a causal connection between her protected activity and her termination by Wardlaw. She also has failed to present admissible evidence establishing that she

17

was terminated from Eberl because of any adverse action by Wardlaw. Wardlaw has argued that Solomon's Georgia-based retaliation claim should be dismissed for a failure to exhaust administrative remedies. However, the court need not address that argument because Solomon has not established a prima facie case of retaliation under Title VII. Wardlaw is entitled to judgment on Solomon's retaliation claims under Title VII.

Finally, Solomon filed a claim against Wardlaw for blacklisting under **Indiana Code 22-5-3-1,** which provides:

> (a) A person who, after having discharged any employee from his service, prevents the discharged employee from obtaining employment with any other person commits a Class C infraction and is liable in penal damages to the discharged employee to be recovered by civil action; but this subsection does not prohibit a person from informing, in writing, any other person to whom the discharged employee has applied for employment a truthful statement of the reasons for the discharge.
>
> (b) An employer that discloses information about a current or former employee is immune from civil liability for the disclosure and the consequences proximately caused by the disclosure, unless it is proven by a preponderance of the evidence that the information disclosed was known to be false at the time the disclosure was made.

**Indiana Code 22-5-3-(a)(b).**

The same allegations that bolstered Solomon's retaliation claim also underpin her blacklisting claim. Accordingly, she has not presented any admissible evidence that Wardlaw disclosed false information to State Farm or Eberl. Without any evidence, Wardlaw is entitled to judgment on Solomon's supplemental state law blacklisting claim. *See **Tomanovich v. City of Indianapolis,*** 457 F.3d 656, 663 (7th Cir. 2006)).

Based on the foregoing reasons, the Motion for Summary Judgment [DE 50] is **GRANTED**, and the Objections and Motion to Strike Portions of Plaintiff's Summary Judgment

Exhibits [DE 65] is **GRANTED.** This matter is **DISMISSED.**

ENTERED this 19th day of June, 2019.

/s/ Andrew P. Rodovich
United States Magistrate Judge